# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**WALTER CURTIS BROWN, JR.**                                                                        **PLAINTIFF**

**v.**                                                               **CIVIL ACTION NO. 1:11-CV-19-SA-DAS**

**TUPELO COUNTRY CLUB**                                                                                **DEFENDANT**

## MEMORANDUM OPINION

In this Age Discrimination in Employment Act ("ADEA") case, Walter Curtis Brown alleges he was terminated from his position as the tennis director of the Tupelo Country Club ("TCC") because of his age. Before the Court is a Motion for Summary Judgment [38] filed by Defendant TCC. After reviewing the motion, response, rules and authorities, the Court finds as follows:

## BACKGROUND FACTS

TCC is a member-owned, non-profit country club located in Tupelo, Mississippi. TCC is governed by a board of directors selected from its membership. The board hires a general manager who is in charge of managing the day to day operations of the club, including staffing. Brown was hired in 1990 as TCC's head tennis professional, and he worked in this position until his eventual termination in March of 2010. During Brown's tenure, he worked under several different general managers. In 2007, TCC hired Wray Crippin as general manager of the club. Crippin testified that, as general manager, he possessed full authority over employment decisions regarding staff members and did not need board approval to terminate an employee.

Crippin became dissasatisfied with Brown's management of the tennis program at TCC. According to Crippin, he was concerned about the low level of play on the courts at TCC, as well as Brown's lack of initiative in creating new programs to attract member interest in tennis. Crippin also received complaints from members about Brown's failure to enforce the club's guest policy.

According to Crippin, Brown allowed non-members to use the club facilities without paying a guest fee and showed favoritism to certain members. In October 2009, Crippin, along with then-president of the board Mark Shelton, met with Brown to discuss these concerns. This meeting was memorialized by a note placed in Brown's personnel file, although Brown claims he was never shown the note.

In March of 2010, Crippin made the decision to terminate Brown. Prior to terminating Brown, Crippin informed the board of his decision. Crippin testified that this was purely informative and no vote was required nor taken regarding the decision. On March 26, 2010, Brown was called into a meeting with Crippin and Paula Fuqua, another club employee. Crippin informed Brown that, "I have a new vision for the tennis program, and it's not gonna include you. We won't be needing you any longer." Brown asked Crippin whether he had done anything wrong and Crippin responded, "no." Brown then accused Crippin of wanting to replace him with a younger tennis professional, and Crippin responded by stating, "We're not going to discuss your tenure." At the time of his termination, Brown was 59 years old and the oldest department head working for the club. Brown was eventually replaced by Kevin Jackson, a much younger tennis professional.

Shortly after his termination, Brown and his wife, Melinda Seitz (who, though not an employee of TCC, helped Brown run the club's tennis shop), met with the president of the TCC board, Matt McCarty, to find out why Brown was fired. According to Seitz, McCarty was very sympathetic, and told him them that "Curtis had not done anything wrong . . . the members loved him," and that the same thing had happened to his mother, that "one day they let her go because they thought she was too old and they wanted to hire some young people."

After filing a charge of discrimination with the EEOC, Brown filed instant action on January

2

21, 2011, alleging that he was terminated because of his age in violation of the ADEA.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Wash. Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

# DISCUSSION

**I.      Age Discrimination**

The Age Discrimination in Employment Act makes it unlawful for an employer "to discharge any individual or otherwise discriminate . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). In this case, Brown claims to possess both direct and circumstantial evidence that he was terminated because of his age. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 n.6 (5th Cir. 2004) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2000)).

For claims based on circumstantial evidence, this Court utilizes the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination. Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010).[1] Once the plaintiff makes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the plaintiff's termination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). If the defendant articulates

---

[1]To do so, a plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was subjected to treatment less favorable than similarly situated employees outside the protected class or was replaced by someone outside the protected class. Okoye v. Univ. of Tex. Hous. Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001).

4

a legitimate, nondiscriminatory reason for the employment decision, the plaintiff must introduce evidence that would enable a reasonable trier of fact to find that the purported explanation is merely pretextual. See Gross, 557 U.S. 167, 129 S. Ct. at 2350, 174 L. Ed. 2d 119; Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010). A plaintiff may show pretext either "through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Jackson, 602 F.3d at 378-79 (citations omitted).

Under this approach, the first two steps of the framework are not at issue because: (1) TCC concedes that Brown has established a prima facie case, and (2) TCC has offered its dissatisfaction with Brown's job performance as its reason for terminating Brown's employment, which Brown concedes is a legitimate, nondiscriminatory reason for the employment decision. At this point, "'the McDonnell Douglas framework-with its presumptions and burdens'-disappear[s], and the sole remaining issue [is] 'discrimination *vel non*.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The Court notes that TCC has produced the testimony of numerous club members, as well as other employees, corroborating Crippin's allegations of Brown's poor performance. Brown fails to refute this criticism other than to imply that the witnesses are biased. However, there is other evidence in the record, which, if believed, would allow a reasonable juror to conclude Brown was terminated based on his age. According to Brown's wife, Melinda Seitz, shortly after Brown's termination, she and Brown went to visit Matt McCarty, the President of the board at TCC for "answers" and to find out why Brown was terminated. According to Seitz:

> Matt told us that [Crippin] told him that Curtis had not done anything wrong, and reiterated what [Crippin] had told Curtis on March 26—that the members love him (Curtis) and no one had any complaints. Matt said that [Crippin] just wanted some new blood. Then Matt shared a story with us about his mother. Matt said that the

5

same thing had happened to her. She had worked at, I believe a bank for a very long time (maybe 30 years) and one day they let her go because they thought she was too old and they wanted to hire some young people. Matt was very sympathetic because he recalled what this event had [sic] to his mother.

The Fifth Circuit has held that comments may be sufficient evidence of age discrimination if they are: "(1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the complained-of adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." Jackson, 602 F.3d at 380; Jenkins v. Methodist Hosp. of Dallas, Inc., 478 F.3d 255, 262-63 (5th Cir. 2007) (citing Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002)). Comments which do not meet these criteria are considered "stray remarks," and standing alone, are insufficient to defeat summary judgment. Jackson, 602 F.3d at 380.[2]

TCC and McCarty vigorously dispute Seitz's characterization of this conversation; however, the Court is not to make credibility determinations at this stage. TCC next asserts that because McCarty did not make the decision to terminate Brown, his statement is not probative as to whether Brown would have been terminated "but for" his age. The Fifth Circuit addressed a somewhat similar situation in Woodhouse v. Magnolia Hospital, 92 F.3d 247 (5th Cir. 1996), where the defendant hospital challenged the sufficiency of the evidence after a jury found for the plaintiff on her claim of age discrimination. In that case, the plaintiff was terminated from her position as the Director of Admissions as part of an undisputed reduction in force (RIF). Id. at 251-52. The plaintiff presented evidence that, two weeks prior to the RIF, the chairman of the hospital's board

---

[2]Because the Court concludes that McCarty's statements to Seitz are sufficient to the deny the motion for summary judgment as to Brown's age discrimination claim, the Court need not consider whether other allegedly ageist comments fall within the stray remarks doctrine.

of trustees told another employee that the hospital was planning on "laying off the older employees." Id. at 253-54. In a subsequent conversation with the employee, when asked if he remembered saying "[t]hey're gonna lay off those old people," the chairman responded, "That's what they told me." Id. at 253.

The court rejected the hospital's argument that the chairman's statement was a stray remark, stating: "The remark . . . specifically indicated that [the Hospital] intended to use age as a factor in its decision of which position to eliminate. We refuse to hold that this statement is insufficient to raise a jury issue on age discrimination." Id. at 254. The Fifth Circuit found that a reasonable juror could conclude that "they" referred to the administrative staff to whom the board had delegated the responsibility for determining which employees would be terminated. Id. Although the hospital asserted that the chairman played no role in the decision, the Fifth Circuit found this argument unavailing, stating:

> Although [the hospital] asserts that [the chairman] had no role in the decision, the evidence indicates that the Board developed the parameters of the RIF, and the administrative staff then made the final policy concerning which positions would be eliminated. Prior to implementing the RIF, a final report was made to the Board which outlined the positions to be eliminated and the employees to be discharged. Thus, [the chairman] was involved in the RIF decision, even though he was not involved in the specific determination of who would be discharged.

Id.

Here, whether characterized as direct or circumstantial evidence, viewing Seitz's characterization of the conversation in the light most favorable to Brown, a reasonable juror could find that age was the reason for Brown's termination. On its face, the alleged statement by McCarty indicates that Brown's age was a basis for his termination. The alleged statement is neither vague nor remote in time. Although TCC contends that Crippin, not McCarty, made the decision to terminate Brown, there is evidence in the record that McCarty, as president of the board, had

7

"authority over the employment decision at issue," or at the very least, was involved in the decision. See Woodhouse, 92 F.3d at 254. In particular, McCarty testified that, in his capacity as president of the board, he discussed the issue of Brown's termination with Crippin and gave his approval, stating in his deposition that "[Crippin] approached us that – me [sic] that had a performance issue and it was a direction he wanted to take – in a different direction, so I agreed with the – with the separation." Although a very close question, a reasonable juror could conclude that Brown's age, rather TCC's stated reasons, was the true motivation for Brown's termination. Accordingly, the motion for summary judgment is denied as to this claim.

## II. Intentional Infliction of Emotional Distress

TCC also seeks summary judgment as to Brown's claims for intentional infliction of emotional distress and mental anguish. In response, Brown concedes that, "As this is a straight age discrimination case, mental anxiety and stress damages are not available." Accordingly, the Court grants TCC's motion as to this claim.

## CONCLUSION

TCC"s Motion for Summary Judgment is GRANTED as to Brown's claims for emotional distress and mental anguish but DENIED as to his ADEA claim.

SO ORDERED on this, the 18th day of September, 2012.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**